IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| EDDA NELSON and LARRY NELSON,<br><br>                    Plaintiffs,<br><br>vs.<br><br>SAFECO INSURANCE COMPANY OF NORTH AMERICA, SAFECO PROPERTY AND CASUALTY COMPANIES, and SAFECO CORPORATION,<br>                    Defendants. | MEMORANDUM DECISION AND ORDER<br><br><br>Case No.  2:03CV574 DAK |

This matter is before the court on (1) Defendants Safeco Insurance Company of America, Safeco Property & Casualty Companies, and Safeco Corporation's (collectively, "Defendant") Motion for Partial Summary Judgment and Plaintiffs' Motion for Summary Judgment, and (2) Plaintiffs' Motion for Partial Summary Judgment.  A hearing on the motions was held on February 9, 2005.  At the hearing, Plaintiffs were represented by Grant M. Sumsion.  Defendants were represented by Rick J. Wathen.  Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties.  Since taking the motions under advisement, the court has further considered the law and facts relating to these motions.  Now being fully advised, the court renders the following Memorandum Decision and Order.

### I. BACKGROUND

This lawsuit arises from a fire that destroyed Plaintiffs' home in Draper, Utah, which was

under construction and was almost completed.  At the time of the fire, which occurred on November 17, 2002, Plaintiffs' property was insured by SAFECO Insurance Company of North America.  After an investigation, SAFECO denied Plaintiffs' claims relating to the fire because SAFECO concluded that Plaintiffs intentionally set the fire and/or arranged to have the fire set.

Plaintiffs' Complaint alleges five causes of action: (1) Breach of Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Intentional Infliction of Emotional Distress; (4) Tortious Violation of Public Policy; and (5) Defamation.  The parties have filed cross-motions for partial summary judgment.  Plaintiffs' motion seeks summary judgment as to three of Defendants' affirmative defenses (arson, misrepresentation, and failure to comply with policy conditions) and therefore seeks summary judgment as to liability under the insurance policy.  Defendant's motion seeks dismissal of everything but the First Cause of Action for breach of contract.  In addition, Defendant has moved to dismiss the claim for "Loss of Use" damages, which is part of Plaintiffs' Breach of Contract claim.  Defendant also requests that the court rule, as a matter of law, that the fire at issue was caused by human intervention and was incendiary in nature.

## II. DISCUSSION

### A. STANDARD OF REVIEW

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c);  *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

(1986). In reviewing the factual record, the court construes all facts and make reasonable inferences in the light most favorable to the non-moving party. *See Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir.1998).

Where the moving party bears the burden of proof on an issue, that party cannot prevail on summary judgment "unless the evidence that he provides on that issue is conclusive." *Torres Vargas v. Santiago Cummings*, 149 F.3d 29, 35 (1st Cir. 1998). *See also Equal Employment Opportunity Comm'n v. Union Independiente De La Autoridad De Acueductor Y Alcantarillados De Puerto Rico*, 279 F.3d 49, 55 (1st Cir. 2002) (same); *Calderone v. United States*, 799 F.2d 254, 258 (6th Cir. 1986) (explaining that if a summary judgment movant has the burden of proof, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.") (citation and emphasis omitted); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) ("[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor.").

B. PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

    1.    **Affirmative Defense of Arson**

Plaintiffs argue that Defendant has failed to establish the affirmative defense of arson because Defendant cannot show that the fire was of incendiary origin or that Plaintiffs intentionally set the fire. Plaintiffs contend that Defendant's conclusion regarding arson is based on the Expert Report of Robert Buffington ("Mr. Buffington"), which is based on assumptions

and speculations and is unreliable under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny.  On the other hand, Defendant argues that the Magistrate Judge already denied Plaintiffs' request to exclude the expert testimony on this point.[1]  Further, Defendant argues that *Daubert* applies only to "novel scientific [sic] which has not been generally accepted in the scientific community."  It contends that the opinions expressed by Mr. Buffington are universally accepted.  Defendant contends generally that cause and origin experts routinely testify in state and federal court.  Defendant, however, misses the point.

     An expert's opinion must have some basis grounded in fact and must be supported by reliable scientific methods.  Fed. R. Evid. 702;  *See Daubert*, 509 U.S. at 590.  Furthermore, under *Daubert*, the district court must exclude expert testimony that is no more than "subjective belief or unsupported speculation."  *Id.*  Additionally, as the Tenth Circuit stated, "[i]t is axiomatic that an expert, no matter how good his credentials, is not permitted to speculate." *Gobel v. Denver and Rio Grande Western R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000).

---

[1] This characterization by Defendant is disingenuous–at best.  While Plaintiffs previously filed a motion to exclude Mr. Buffington's testimony–based both on its untimeliness and on *Daubert* concerns–the Magistrate Judge did not rule on the *Daubert* issue.  Unfortunately, the Minute Entry and the Order regarding Plaintiffs' motion did not specifically address whether the Magistrate Judge had ruled on the *Daubert* issue.  Nevertheless, because Plaintiff moved to exclude the testimony of Mr. Buffington based on *Daubert*, and Defendant responded that the Magistrate Judge had already denied Plaintiffs' request to exclude the testimony, thus rendering the issue moot, *see* Def.'s Mem. in Opp'n at 2; Def. Reply Mem. at 10, the court retrieved and reviewed the partial transcript of that hearing that had already been prepared.  That review clearly revealed that the Magistrate Judge did not reject Plaintiffs' *Daubert* challenge, and in fact understood that the district court would rule on that issue in the context of the summary judgment motions that had already been filed.  *See* Transcript of November 16, 2004 Hearing at 5-9.  Defendant's misrepresentation created significant additional work for the court and delayed the resolution of this matter.

Defendant's only proffered evidence of incendiary origin and/or that Plaintiffs intentionally set the fire is based on the opinions of Robert Buffington.[2]  While Mr. Buffington appears to be well qualified in this area, he has failed to offer the factual basis, supported by reliable scientific methods, for his opinions.

For example, he observed that "[a]gainst the east wall and approximately 12' from the position of the space-heater was found an area where a large number of five-gallon containers had been consumed in the fire."[3]  He speculates, however, that the cans started out being approximately four to five feet from the fire.  It is entirely unclear how the cans could have started out four feet from the fire and then ended up–after the fire–being together, exactly where Plaintiff testified he left them.  There is no apparent basis for concluding that the flammables were ever within four or five feet of the location at which the space heater was found.  Further, there is no evidence regarding how the cans would have ended up twelve feet away after the fire, even if they had been that close.

Moreover, he has failed to provide a scientific basis for his conclusion that the heater could have ignited the materials even if they were located four to five feet away from the heater.  He admits that he did not conduct any testing to make this determination.  Rather, he stated that he knew from his previous experience that this heater could have ignited these materials at the

---

[2] Although Defendant has also relied on the owner's manual that allegedly came with the salamander heater, the court finds that incendiarism cannot be proven in this case without expert testimony.

[3] The cans contained flammable liquids such as lacquer, stain, thinner, and other finishing materials.

distance of four to five feet.  However, there is no indication that his previous experience involved the same type of heater, the same materials, the same distances, or the same time frame.  He admitted in his deposition that he did not know how long it would take the heater to ignite the materials in the home, or even if it would.

Similar to the decision in *Truck Insurance Exchange v. MagneTek, Inc.*, 360 F.3d 1206 (10th Cir. 2004), this court finds that there is no valid and reliable evidence that the heater could generate enough heat in the relevant time period to ignite combustibles.  Specifically, there is no evidence of either the ignition temperature of the combustibles or the temperature to which the heater is capable of heating the combustibles at a distance of four to five feet.  Conversely, Plaintiffs offer significant evidence that the heater would not be able to generate sufficient heat to ignite the liquids at distances of four to five feet away, and they have provided factual bases grounded in accepted scientific methods for their conclusions.

Therefore, this court concludes that Mr. Buffington's conclusions are no more than a subjective belief or unsupported speculation, and the court must exclude his opinions under *Daubert*.  With the elimination of this evidence, Defendant has offered no evidence to create a genuine issue of material fact regarding whether the fire was incendiary.[4]  Consequently, there are no genuine issues of material fact sufficient to defeat Plaintiffs' motion for summary judgment on Defendants' affirmative defense of arson and it must be dismissed.

---

[4] Plaintiffs also argue that there is no evidence that the Nelsons caused the fire, even if it was intentionally set.  They claim that there is no evidence of motive or opportunity.  The court, however, finds that there are genuine issues of material fact regarding these issues, and thus it bases its grant of summary judgment solely on the ground that there is no admissible evidence on the issue of whether the fire was incendiary.

### 2. Affirmative Defense of Misrepresentation

Plaintiffs argue that Defendant's affirmative defense of misrepresentation fails as a matter of law because Defendant cannot show that it relied upon any alleged misrepresentation made by Plaintiffs, that Plaintiffs knew of or intended to make any alleged misrepresentation, that any of the alleged misrepresentations were material, or that the alleged misrepresentations contributed to the loss.

The court finds that there are genuine issues of material fact that preclude summary judgment on this issue.[5]  Thus, a jury must decide this issue.  However, because the court has

---

[5]  It bears noting that the court is deeply troubled by the repeated mischaracterizations of the evidence by Defendant.  It has been difficult enough to sort through hundreds of pages of exhibits that contain no tabs.  Moreover, Defendant's propensity to cite to entire depositions or other lengthy documents without providing a specific page citation has also made the court's task much more complicated and time consuming than it should have been.  The blatant distortions of the record, however, are intolerable.

For example, Defendant repeatedly refers to Mrs. Nelson's alleged testimony that "she actually had much of the requested documentation in the trunk of her car at the time of the fire and that the same was not destroyed in the fire."  Def.'s Mem. in Opp'n to Pls.' Mot. for Summ. J. at 18; *Id.* at 23 ("Mrs. Nelson testified . . . that she in fact had 'boxes' of important documentation in the trunk of her car on the day of the fire which were not destroyed by the fire. . . . She also had a sack full of receipts."); Def.'s Mem. in Supp. of Mot for Partial Summ. J. at 10 ("Mrs. Nelson testified in her deposition that as of the date of loss, she had a box located in the trunk of her car which contained all of the important papers at the time of the fire."); *Id.* at 15 (Recent testimony indicated that "Plaintiffs were in fact in possession of an entire trunk full of documents that did not burn in the subject fire."); *Id.* at 26 ("Edda Nelson recently testified that she actually had much of the requested documentation in the trunk of her car at the time of the fire and that the same was not destroyed in the fire.")

Mrs. Nelson, however, never so testified.  Her actual testimony is that she kept in her car a bag that contained the mail that she had received in the two or three months preceding the fire.  She also testified that she periodically took the mail that she was saving up to the house to put it into filing cabinets there.  There is no evidence that any of the items of personal property had been purchased within the two or three months preceding the fire or that the documents that she had included any of the documents that Defendant requested.  Defendant's repeated arguments to the contrary are appalling.

stricken the opinions of Mr. Buffington, Defendant may not assert the affirmative defense of misrepresentation as it relates to Defendant's assertion that Plaintiffs intentionally set the fire and/or arranged to have the fire set.

**3.      Affirmative Defense of Failure to Comply with Policy Conditions**

Plaintiffs contend that Defendant's affirmative defense that Plaintiffs have failed to comply with policy conditions fails as a matter of law because Defendant cannot show any material failure of any policy conditions. Defendant, on the other hand, contends that Plaintiffs failed to produce the requested documentation, failed to obtain copies of their credit card statements and bank statements, and failed to contact various vendors to establish the purchase and ownership of some of the personal property items claimed.

The court finds that there are genuine issues of material fact that preclude summary judgment on this issue, and thus it must be decided by a jury.

---

Furthermore, Defendant also repeatedly claims that Mr. Nelson's medical records do not support the claim that he suffered a heart attack and that they indicate he was suffering from situational anxiety. Def.'s Mem in Opp'n at 19; Def.'s Mem in Supp. at 6. The medical records from November 17, 2003 indicate that the diagnostic impression is "acute myocardial infarction," i.e., a heart attack. To support Defendant's assertion that Plaintiff was actually suffering from situational anxiety, Defendant either negligently or intentionally relies on medical records from a different hospital visit, which occurred on December 9, 2003.

Defendant also claims that the Nelsons "were penalized $30,000 as a result of not having the project completed and a final occupancy permit issued." Def.'s Mem. in Supp. at 4. They cite to "Exhibit E." The court read Exhibit E (which contains numerous pages from the Deposition of Janet Zimmerman) and no such testimony is contained therein.

Additionally, the court has already noted above the lack of candor regarding the *Daubert* challenge to Mr. Buffington's report.

While there is sometimes a fine line between zealous advocacy and distortions of the truth, that line clearly has been crossed here. Any such attempt to misrepresent the record at trial or in any other document or proceeding before this court will result in severe sanctions against Defendant and/or its counsel.

### 4. Liability Under the Insurance Contract

Plaintiffs seek summary judgment that Defendant is liable under the insurance contract for Plaintiffs' loss because Plaintiffs complied with all the terms of the policy and Defendant cannot establish any of its affirmative defenses.

Although the court has granted summary judgment on Defendant's arson defense, there are two remaining affirmative defenses that have been left for the jury to decide. Thus, the court cannot grant summary judgment on liability.

## C. DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

### 1. Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendant argues that Plaintiffs' bad faith claim must be dismissed because the denial of the claim was at least fairly debatable and thus cannot be found to have been in bad faith. In asserting that the denial was at least fairly debatable, Defendant relies on the conclusions of Mr. Buffington (which, as discussed above, will not be permitted into evidence at trial), the alleged gross overinflation of the value of the claim, and the alleged misrepresentations and concealment of material facts.

The court finds that there are many questions of fact as to whether Defendant diligently investigated the facts to enable it to determine whether the claim was valid, whether it fairly evaluated the claim, and whether it acted promptly and reasonably in rejecting the claim. *See Prince v. Bear River Mutual Ins. Co.*, 56 F.3d 530 (Utah 2002). Thus, a jury must decide if the denial was reasonable, or, in other words, "fairly debatable."

### 2.     Intentional Infliction of Emotional Distress

Defendant contends that it is entitled to summary judgment on Plaintiffs' cause of action for intentional infliction of emotional distress. The court finds that there are disputed issues of material fact that preclude entry of summary judgment on this claim.

### 3.     Tortious Violation of Public Policy

Defendant asserts that Plaintiffs' cause of action for "tortious violation of public policy" is without merit. They contend that Utah courts do not recognize such a tort in this context. In *Prince*, 56 F.3d at 538 n.6, the court stated, when faced with the appeal of a dismissal of a cause of action for tortious violation of public policy, "[w]e have never recognized this tort." In Utah, such a tort has been recognized only in the employment context. It has never been recognized in a first-party insurer context. Thus, because this claim does not exist in Utah, it is dismissed.

### 4.     Defamation

Defendant contends that it is entitled to summary judgment on Plaintiffs' cause of action for defamation. Plaintiffs claim that Defendant made defamatory statements to Cyprus Credit Union when Defendant advised the credit union that it intended to deny Plaintiffs' claim based upon the conclusion that Plaintiffs set the fire.

Utah law provides that a communication is qualifiedly privileged if made "without malice, to a person interested therein, by one who is also interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information." Utah Code Ann. § 45-2-3-(3); *see also Brehany v. Nordstrom*, Inc., 812 P.2d 49, 58 (Utah 1991).

The court declines to grant summary judgment to Defendant on this claim but finds that the statement made to Cyprus Credit Union was qualifiedly privileged. Consequently, to prevail on this claim at trial, Plaintiffs will have to demonstrate that the statement was made with malice. *See Brehany*, 812 P.2d at 58. The court finds that the defamation claim as to the September 11, 2004 letter must be dismissed because the letter has not been published to any third parties.

**5.     Loss of Use Damages**

Defendant argues that Plaintiffs are not entitled to "loss of use" coverage because the house was not Plaintiffs' "residence premises" as defined by the insurance policy. The policy states that:

> 1. If a loss covered under this Section makes that part of the residence premises where you reside uninhabitable, we cover, at your choice, either of the following:
> . . .
> b. "Fair Rental Value," meaning the fair rental value of that part of the residence premises where you reside, less any expenses that do not continue while the premises is uninhabitable.

The policy defines the term "residence premises" as

> a. the one or two family dwelling used principally as a private residence;
> b. other structures and grounds; or
> c. that part of any other building
>
> where you reside and which is shown in the Declarations.

Defendant claims that the insureds must actually reside at the premises at the time of the loss. They claim that, in this case, neither Plaintiff ever resided in the house at any point.

In addition, Defendant claims that the insurance policy does not provide coverage for loss to the P&H Omega Crane and the Grove Manlift. The insurance policy states that it covers

"Motorized land vehicles not licensed for road use and used to service an insured's residence." Defendants contend that because Plaintiffs never resided in the house located on Lapis [sic] Drive, they are not entitled to recover these losses.

Plaintiffs, on the other hand, argue that this provision–particularly the phrase "where you reside," is ambiguous.[6]  The court agrees.  In reading the insurance policy as a whole, if Defendant believes this interpretation is correct, then it is unclear why Defendant believes this policy covers the subject house at all.  The "insured location" means the "residence premises," which, as set forth above, essentially means where you reside.  Thus, it appears to the court that because Defendant has not interpreted this language to apply to the insured location, it is puzzling that they would apply it to the "loss of use" provision.  Furthermore, Defendant knew that it was insuring a house that was under construction, thus making such a restriction somewhat incomprehensible.  Thus, the provision is ambiguous and should be construed against Defendant.  Consequently, it is for a jury to decide whether to award "loss of use" damages and in what amount.

### 6.     Incendiary Fire

Defendant seeks summary judgment that the cause of the fire was incendiary.  As

---

[6]  While not material to the court's resolution to these motions, the court notes that Plaintiffs offer quite contradictory statements regarding their insurance policy.  In arguing that they viewed the home as their residence, they claim that they "purchased the insurance policy with the understanding that the policy would cover that particular home."  Pls.' Mem. in Opp'n at 30-31.  However, earlier in their memorandum, they assert–without any support–that they did not submit a claim to SAFECO the day after the fire because they "were unaware of their coverage at that time.  It was not until after the Nelson's had spoken to representatives at Cyprus Credit Union and others that they came to understand the coverage available to them under the policy."  Such contradictions have not assisted the court in deciding these motions.

discussed above, because the conclusions of Mr. Buffington have been excluded and Defendant has offered no other evidence of incendiarism, the court cannot grant summary judgment.

      7.     **Other Defendants**

Defendant seeks dismissal of Safeco Property and Casualty Companies and Safeco Corporation.  Defendant claims that Plaintiffs have improperly named them and have no evidence to establish that these are proper Defendants.  Plaintiffs disagree, arguing that the companies are all interrelated.

The insurance contract is with Safeco Insurance Company of America.  Plaintiffs have failed to create a disputed issue regarding whether the other Defendants are properly named.  Accordingly, they are dismissed.

### III. CONCLUSION

For the foregoing reasons and good cause appearing, IT IS HEREBY ORDERED that Plaintiffs' Motion for Summary Judgment is GRANTED in part and DENIED in part.   The opinions of Robert Buffington are inadmissible under *Daubert* and its progeny.  Accordingly, Defendant's Affirmative Defense of Arson is DISMISSED.  Defendant's Motion for Partial Summary Judgment is GRANTED in part and DENIED in part.  Plaintiffs' Claim for Tortious Violation of Public Policy is DISMISSED, and Plaintiffs' claim for Defamation based on the September 11, 2004 Letter is DISMISSED.  In addition, Defendants Safeco Property and Causualty Companies and Safeco Corporation are DISMISSED from this action.  The court has previously set a scheduling conference for June 20, 2005 at 2:30 p.m.  At that time, the court will

set a new trial date.

    DATED this 10th day of June, 2005.

                           BY THE COURT:

                           _____
                           DALE A. KIMBALL
                           United States District Judge